Yachts, Inc. v. Barker Mr. Shurker. Thank you, Your Honor. May it please the court, Elliot Shurker on behalf of the appellant Yellowfin Yachts. The question before this court on review of the district court summary judgment simply stated, is there a factual dispute as to whether Barker infringed on Yellowfin's trade dress or its bayboats? That is to say, whether there is evidence that the trade dress of Yellowfin's bayboats and the Barker bayboats is confusingly similar, whether the trade dress features are primarily non-functional, and whether Yellowfin's trade dress has acquired secondary meaning. But overarching all of these questions, Your Honors, is whether the district court was correct in ruling, both as a matter of fact and as a matter of law, that Yellowfin's shear line is both generic and primarily functional. Because if there is evidence in this record that the shear line is distinctive and that the shear line is non-functional, that is Yellowfin's shear line, none of the three bases for summary judgment, which are no description of a distinctive shear line, sweeping shear line is functional, and there's no likelihood of confusion, can be upheld. And there is indeed such evidence. It is a declaration of Wiley-Nagler, Yellowfin's principal, and the designer of the distinctive Yellowfin shear line, which the district court refused to consider. Let me ask you something. It seems like in this circuit we have not articulated what the standard is for showing, for what trade dress is, for identifying how you have to demonstrate trade dress. What is your position as to what our test on that should be? Judge, I refer the court to the Miller-Alehouse decision, which was cited in our brief. And I think that's the most recent and most thorough compendium of the elements for trade dress. And I refer the court to the decision at 702 F.3rd, which is at the beginning of page 1323, in which the court had continued to adhere to the inherently distinctive test, going back to the Federal Circuit's Seabrook test, and addressed the question whether the trade dress is inherently distinctive. But, and I understand that, but I guess my question is, how is that articulated? How is it demonstrated whether it is inherently distinctive? What do you have to do in order to demonstrate that? Do you have to articulate it in words? How do you do that? We did both, Your Honor, and the court has not said. Right. But what I'm asking you is, what is the test that we should, that we should adopt for determining what that standard is? I understand the question. The, I don't think any court has definitively defined inherently distinctive, which is why it's always a question of fact. What distinguishes this? What gives it the secondary meaning? And I think that's perhaps the best, the best way to look at it in terms of trade dress, that when you see certain taillights, you know it's a Ford. And if it isn't a Ford, you think it's a Ford. So the old Potter Stewart test. You know it when you see it. Apparently so, Your Honor. And that's about the best I think the courts have been able to do. Now, what we have here is both words, contrary to the district courts, we have words describing this unique sweeping shear line. Of course, a shear line is functional. It is. But their expert says, not even our, not even Mr. Nagler says. He says, I know this particular manufacturer's shear line because it's, I know it because it's like the Mona Lisa. It's so, it's so unique and distinctive. He says that yes, shear lines are functional, but the choice of shear line, and I had to look this word up, is the arbitrarium of the poet. It's apparently the discretion and judgment of the poet. Now, if that isn't a description of inherently distinctive, I don't know what is. Poetry by its nature is not functional, thank goodness. So we, we answer the court's question as best we can by looking to the evidence in this case and determining whether it is a fair question of fact. But why, I'm sorry, go ahead. The trial court said you did not provide the words to describe the shear line. You said you, you have. What are the words that you've used to describe the shear line? Judge, let me refer the court to our reply brief at page two, where we quote from our interrogatory response at record 86-11, page 7. The shear line is a sweeping, curved shape formed by the upper edge of the side of the hull from the bow to the stern. In the 21 and 24 foot models, the shear line near the stern of the boat is different from the rest of the line of boats and it doesn't sweep downward toward the water line. So the 21 and 24 foot boats don't share that small portion. But the balance of the shear line on the 21 and 24 foot boats incorporates the trade dress. And we have innumerable pictures attached to that interrogatory, all of which show the exact same proportional sweeping trade line. Why can't you describe it in proportions then? I'm sorry, Your Honor? Why can't you describe it in proportions then? Well, we did. We did. We said that each boat, the 21, obviously the shear line on the 41 foot boat is different than the shear line on the 21 foot boat. True, but the proportions presumably would be relatively similar. Yes, it's the same inflection point. That's what Mr. Villalon, their expert teaches us. I don't even need Mr. Nagler's declaration for that. A shear line sweeps, necessarily, but the inflection point in the middle of the shear line, that's where the design is. And that's what Mr. Nagler's declaration says he chose as the distinctive shear line. And more to your question, Your Honor, if you look at the boating reviews that we attach to our response to the summary judgment, the boating reviews say you can spot a yellow fin without seeing the name because the shear line is that distinctive. And that's enough to get us to a jury. But that description you just read, doesn't that describe all shear lines? Where is it different from others? The sweeping curved shape of this shear line. And I think that's where the district court and my opponents keep getting hung up. All shear lines have a function. All bay boats have swept shear lines because bay boats go out in rougher water and you need a higher bow and a lower stern to boat the fish. But the designer chooses from thousands of potential shear lines for the actual inflection point. And this is what the boating press describes it as. The distinctive proud bow and dramatically sloping shear line from the proud bow, it's tough to say, to the swooping shear, a yellow fin is unmistakable. That was the evidence before the district court. How would a trial court draft an injunction if the trial court had found in your favor? How would it, it would simply say a sweeping shear line? This shear line. There's a, there's a drawing of it. You go back to the picture, not words. Picture and the drawings. There's a drawing of the shear line. As your honor will look at our brief, there's a drawing of an overlay of the three, our shear line, their shear line and the match. That's all we've said from the beginning is this shear line from our boats is our trade dress. That's how everyone has recognized the yellow fins since there have been yellow fins. But that's, that's not really using words. It's using pictures to say, this is what we're protecting. Well, your honor, I guess it would be like trying to describe a tide box in words. You can say certain things about it. It's red. It has the word tide. It has some different colors on it, but it's what the tide box actually looks like. That's trade dress. So yes, you're getting, you're getting to what is, is really the, the nub of, of trade dress. The point is, you can look at the picture and then describe it. Yes, sir. You can. I'm from Jacksonville and there's a boatyard there that's been there a long time and it's called Huckins. Yes, sir. And Huckins built PT boats during the war. But at any rate, if you lined up five yachts, same size, same function, same this, that, the other thing, everybody in Jacksonville would know a Huckins. You'd know a Huckins from 500 yards away. And that's what these, as I read these expressions in the, in the magazines, you, you know a yellow fin when it's coming down, downstream. Judge, I couldn't say it any better. Well, but I'm, what I'm saying is, you, you look at the picture and then you describe with reference to the picture, the distinction, the distinctiveness of the shear line. Which is what Mr. Magler does in his supplemental declaration. It's exactly what he does in his supplemental declaration. If you ask one of the people who I would suggest, that wrote the article, and that's a picture of the vessel, the person would point to it and say, here it is. I don't know how else, for myself, you could describe the shear line. Exactly so. You can say that is a shear line, but here's, here's what makes it a yellow fin shear line. Exactly so. There's our shear line. That's the drawing of our shear line. That's the of the Parker shear line. And that is the only, only thing for which we are seeking protection is the yellow fin shear line. And an injunction, Your Honor, would prohibit the crafted, however, perhaps with a drawing such as this, would prohibit the use of our shear line. Because that is what distinguishes our boats from any other. And that's the whole point of inherent distinctiveness. And the whole point of post-sale confusion, sort of wrapped into one. If I'm standing on a dock, and I see what's known to me, what looks exactly like a yellow fin, because it's got the swoop shear line, and I watch the boat going across the water, I later find out it's a Barker. I said, well, I guess yellow fins endorse Barker, and it's pretty much the same boat. So I could just as soon buy it from Barker. And if Barker's got any sense in going into competition with us, which he fully intended to do, when he left us with all that information, and he fully intended to use our boat as his model because the first drawings from the first architects meeting say yellow fin 24 on them, is maybe he'd sell it a few bucks cheaper. So the whole reason for that kind of protection is that if I see that boat, I like that boat, and then when it pulls up, I see it's a Barker, and I thought it was a yellow fin, I said, well, perhaps yellow fins have gone into business, and they're calling this Barker. Barker sells it for a thousand bucks cheaper. I'm going to buy it from Barker. That's why we require that kind of protection. Thank you. But what is the evidence of likelihood of confusion here? Evidence of likelihood of confusion in post-sale confusion is that Mr. Nagler in the same affidavit, the same declaration, said that he's lost customers to Barker. And you don't need very much for likelihood of confusion. You just need some evidence of likelihood of confusion. And here, when it's post-sale confusion, and we have the exact same, the exact same shoreline, it almost speaks for itself, is that it's going to be entirely possible from a distance, say 500 feet, to look at a Barker boat and suspect that it's probably a yellow fin boat. Were any, I'm sorry. No, go ahead. Were any of the lost customers identified? Not by name, Your Honor. Not by name. And as to the lost customers, were they lost because they were confused and thought that? Yes. And what is the evidence of that? Mr. Nagler's declaration, the other side says it's hearsay. It was not introduced for its truth. It was introduced to show that people said it. And people said it to Mr. Nagler. That, I mean, that seems like it's for its truth. No, it's just that it was spoken. Mr. Nagler is saying this was spoken to me, and that's evidence of actual confusion. Well, I think in order for us to find it to be evidence of actual confusion, we'd have to, we'd have to rely on what was, what was said. Right? Not for the truth of them buying the boat, just for the fact that they said it confused them. I think, Your Honor, I'm not trying to split hairs here, but I think, and if we, if we, and I realize I'm using up my rebuttal time here, but this is important. If we look at the secondary meaning aspect, and we look at it in terms of actual confusion, bear in mind the only reason we lost in the district court on actual confusion is that the district court believed our sheer line is generic. That's why we lost, is because it's a generic sheer line, no one's going to be confused. Well, everybody has the same thing, so there's nothing to it. Exactly right, Your Honor. And this is a distinctive sheer line. There's evidence that it's a distinctive sheer line. And yes, this, if the argument's made by the other side, should be made to a jury, but should not have prevailed on summary judgment. Mr. Gilchrist. May it please the court. My name is Brian Gilchrist. I have the honor of representing Barker Boatworks. Let's take a step back. The law of trade dress protection is that the overall look and product configuration or product design is so inherently distinctive for secondary meaning that it creates a unique aspect of the product. Why couldn't it be a combination of words and a picture? For example, the swoosh on Coke. I think it can, but if you look at what Yellowfin has provided the court, all they've said is it's unique to Yellowfin. Well, they have also said it is the S-shaped sweep design, and they've provided a line to show what it is. And again, the line is not a sheer line. A sheer line is a three-dimensional object, so we're looking at a portion of a sheer line. But in context, in order to have a trade dress protection, it's got to be, it has to have secondary meaning, that portion of the sheer line. And what they've always and continuously said is, well, it's unique to Yellowfin. And the evidence was it's not unique to Yellowfin. All the other bay boats that require this functionality, a high bow and a low stern, utilize this sweeping sheer line. And so the question is, the very first test for trade dress protection is whether it's functional. Well, what about the evidence that's on the record that the trade magazines have suggested that as soon as you see this particular line, you know that it's a Yellowfin? That goes to the secondary meaning, the strength of the mark, or likelihood of confusion. But the articles don't say a sheer line or a portion of a sheer line, as alleged, identify it as a Yellowfin. Again, it talks about the crowd bow, the lifting bow, the dramatic sweep at the end, which is not claimed to be part of the trade dress. So it's the overall look and function of the boat that the articles talk about as to, and that would go to the likelihood of confusion or the secondary meaning. There's an article by a man named Clark. Ever wonder if you took the logos off many boats today, whether you'd still be able to tell them apart? Never have any difficulty discerning a Yellowfin from the proud bow to the swooping sheer. A Yellowfin is unmistakable. There's several of those kinds of comments. Well, the proud bow is the functional aspect of it. The sweeping sheer. The swooping sheer is a reference to what we call euro sheer at the end as it drops off toward the waterline. You can't possibly, another article, possibly mistake it for anything but a Yellowfin. It's distinctive proud bow and dramatically sloping sheer line. Right. The swooping sheer line at the end of the bow, which is not claimed to be part of the trade dress. But before we ever get to a likelihood of confusion, it's incumbent upon the plaintiff to show that it's non-functional. You can have something that's functional, like the leg of a chair, and then the artist or the designer has a little wrinkle. You can. And they're all functional. Right, but it's the ornamental aspect of it. So if it's functional, and again... Are you contending that if something is functional, it cannot also be non-functional because of the design? I'm contending that an S-shaped sheer... Yes or no to that? Well, if you could repeat it. Can you give me a yes or no? If it's functional, it can't have a non-functional aspect to it. I would say it can have a non-functional aspect. Well, then your argument in this case is it doesn't have. It does not have a portion of the sheer line. The raised bow, the lowered stern with a S-shaped or a sweeping sheer is entirely functional. Well, then why do these people who write these articles say that the yellow fin is set apart? Well, I can't speak to them, but... Well, I mean, why would they? Because there's a unique aspect of the yellow fin, which is that sweeping euro. Well, that's what the argument is, the unique aspect of the sheer line. No, that portion of the sheer line has been contended to be not part of the trade risk claim. Just so I'm sure I'm understanding your argument, are you talking about this model? And I'm sorry, it's probably hard to see, but this model of the boat, which has the line that goes across and then it drops down. Exactly. And that drop down that you're talking about is not reflected in the sheer line that counsel for yellow fin showed us earlier. This, right? Correct. And so you're saying that the part that's distinctive about the yellow fins is only appears on some boats and the boats that it appears on, that is not a part of the sheer line that's claimed in this case. Right. I just want to make sure I understood your argument. And the Barker boats do not have that swooping euro transom. So all we're talking about, as plaintiff has defined it, is a sheer line that is higher in the bow, lower in the stern, and it's connected by a... Why would your client tell the architect to take a look at the 24 and then replicate it? In effect, a jury could find that it would take that 24, here it is, and replicate it. Well, I'm not sure that is the evidence, but I think it's entirely fair if that occurs. Well, let's assume it's in the evidence, that that was the instruction. Okay. All right. What could a jury infer from that? Well, we don't get to that because... Can you answer me what a jury could infer from that kind of a statement? A jury can infer from that kind of statement copying. But not all copying is a violation of the trade dress. Okay. They can infer that you're copying the sheer line and then the question becomes whether it's unique. Well, the question becomes whether it's functional. I understand that. Yeah. A sheer line is functional, but it also... We just agreed that it can have an artistic element to it which is non-functional. Correct. Okay. And so when we're talking about what the plaintiff has claimed, he's claimed a portion of the sheer line that is entirely functional. And that portion... No, but when you tell that when the architect is instructed to take that sheer line, that's the functional part and the non-functional part. No, because the architect wasn't instructed to take that... Well, let's suppose a juror could believe that copy the 24. That's the gist of the instruction. Okay. Okay. And then the architect testified... And a jury can infer that's why your client took the information from the employer. Well, there was no allegation they took drawings. Well, I may be mistaken. There's something in the evidence that he told the designer to take the 24. Well, I think the evidence... Or what's that effect? I think the evidence was the 24 looks too offshore. But the architect testified that the sheer line he developed... I'm talking about what he told the architect. Right. Okay. But the architect testified that the sheer line, the swooping sheer line, was identical to others he had made in the past. Well, we're on summary judgment. Now we're having a disagreement about what it was that was told to the architect. Then I get back to the functional aspect. We never get to that portion of it because functionally, having that sweeping sheer line is, under traditional tests, necessary. Well, it was just generic then, in effect. That's what the court said. It's generic. The court said it was functional and generic. Yeah. Okay. It's open for copying. It is open for copying. Okay. Well, then the court should have said there couldn't be any carbon fraction here because it's generic and it's open to the world to copy. Correct. Okay. And the test, there's a two-part test. There's a traditional functionality that if it serves a functional purpose, it's not entitled to protection, and aesthetic functionality that if that's what the consumers are looking for. I'm familiar with all that, counsel. Okay. But if it's generic, it's open to the world. You're giving it to the world. Yes, sir. Just like when a patent expires. Correct. So the argument that it has to be described, I think, is a fair argument as well, for just that reason tying off on the argument or the suggestion of patent. If a patent, and we're excising the shear line out of the boat, out of the rest of the elements of the boat, a portion of a shear line, and if that's what your claim is, you have to define it with a relative specificity so that others in the magazines define it. They describe it. Magazines describe a proud bow and a dramatically. With the shear line. You can tell. And that it's unique because that's how you spot a yellow fin. With a dramatically sweeping shear. But a magazine. All of the boats that they talk about have shear lines. Right. All of them. Right. But there goes a Huckings. There goes, if you're in Jacksonville, there's a Huckings. And you can put it in words what you're seeing. Which we didn't have. Well, the magazines put it in words in my view. Well, and I respect. And they point out that aspect of the boat in the article. Well, and that's where I'm having a difficulty with your suggestion. They point out a dramatically sweeping, the Euro transom at the end. Which is what distinguishes the yellow fin. Which Barker doesn't have. And the plaintiff said that portion. That's a fact issue. If Barker has copied it, it's a fact issue. But if Barker doesn't have what's unique about it, the aesthetic portion of it, it's not a fact question. You're talking about the down sweep at the very end. Correct. That's not a part of the sheer line that yellow fin is claiming is its trade dress. Correct. And the reason that they can't claim it is because Barker doesn't have that aspect of the sheer line. So they have to draw an arbitrary line somewhere along the sheer line in order to try and match it up. And what they can't identify is how their sheer line is any different than any other bay boat. Because functionally, the bay boats require the higher bow and the lower stern. And the sweeping sheer line creates a non-tripping hazard. And so the articles talk about this dramatic sheer line at the end that drops off. That plaintiff has said, that's not part of our trade dress. And yet they want to rely upon that language to say, well, it's unique. And had that been the case and said, well, that's the unique aesthetic portion of it, we would still prevail because Barker simply doesn't have that aspect of the sheer line. Not sure I've made myself clear. I think we understand your point. Okay. Thank you, Your Honor. Are there any other questions, Your Honor? Thank you. Thank you very much, Mr. Gilchrist. Mr. Sharker. If it pleases the Court, I think I finally understand what their argument is for the first time today. And these are sheer lines from Mr. Nagler's declaration. Nothing here. The distinctive sheer line is chosen from among these. This is probably pretty close to the yellow fin. And you see there's nothing at the back of it. And when we show the overlays of Barker. And I understand what you're saying. I think what he's saying is that those articles that you rely on in talking about what makes a yellow fin's profile or whatever you want to describe it as unique, is its overall image or impression that it leaves, which includes the dramatic downturn at the end, which is not a part of the sheer line. Mr. Clark's article, which Judge Shelflight, you quoted, says swooping sheer. It doesn't say downward anything. That's true, but it says it in the context of a sentence. If you read the whole sentence, it talks about, you know, a line that includes something that comes before and after the swooping sheer. Right. And some of the smaller boats don't have that. This is record 111-10, pages 6 through 7. You see the 21 and the 24 don't have that little drop at the back because they don't need it. But you see the sheer. I understand that. But as I understand what he's, and I'm not making a decision one way or the other, but it would be great if you could respond to it. I think what he's saying is that the articles that you are relying on to demonstrate the uniqueness of the sheer line don't go to just the sheer line because they're talking about the larger boats that have that drop off, and you are talking about a sheer line that is used in the smaller boats. I understand. I don't want to parse Mr. Clark's words, but he doesn't say that in his article. He says you can tell a yellowfin. It was about a 36-footer, to be clear. That article was about the 36-footer, which has that little bit at the back, which we don't claim is part of our trade dress because, depending on the size of the boat, you don't need that for the little ones. But it's not just the articles, Your Honor. It's in Mr. Nagler's declaration that the district court refused to consider on its own motion, no argument from the other side that it shouldn't be considered. And what Mr. Nagler says is that defendants could have chosen a different-looking sheer line, a broken sheer line, a straight sheer line, a reverse sheer line, or a combination of shapes. He says he designed the sheer line. I created the sheer line. I created the sheer line to be distinctive. I created the sheer line to show that it's a yellowfin. And the sheer line is what is reflected in the declaration. Didn't he also testify during his deposition that the sheer line basically, you know, just was functional and connected, that all bay boats had to have this similar sheer line? No. I'm sorry, Your Honor. What he said in his declaration, his deposition, was that there's a difference between a flat skiff and a bay boat, that a flat skiff doesn't have a swooping sheer line. And we do make a flat skiff, but that's got nothing to do with our bay boat sheer line being copied here. And there's no conflict between the two bits of testimony at all. And it's very much explained in the supplemental declaration that, yes, a sheer line is functional. You're hearing it from me. A sheer line is functional. It joins the hull of the boat to the deck of the boat. But the arbitrarium of the poet, according to their expert, is in the shape of the sheer line. And a manufacturer wants their boats to be instantly recognizable out there on the water. So if some fellow's out there in an old boat and he sees the yellowfin go whizzing by with that sheer line, he's going to say, maybe I want one of those instead of mine. But if it's a Barker boat, then that's where the post-sale confusion comes in. Thank you very much. Thank you. We'll go to the last case.